Pennsylvania Social Services Union, Affiliated Service Employees International Union, AFL-CIO, Appellant, *v.* Pennsylvania Labor Relations Board, Appellee, and Commonwealth of Pennsylvania, Intervening Appellee.

Argued September 6, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., ROGERS and BLATT. Judge MENCER did not participate.

442

*Stephen A. Sheller,* with him *Michael F. Kraemer* and *Astor & Weiss,* for appellant.

*James L. Crawford,* with him *James F. Wildeman, Raymond W. Cromer* and *Anthony J. Malloy,* Assistant Attorneys General, for appellee.

*Thomas H. Lane,* with him *Morgan, Lewis & Bockius,* for intervening appellee.

OPINION BY JUDGE WILKINSON, October 2, 1974:

This case arises from a charge by appellant that intervening appellee has engaged in an unfair labor practice in that it refused to negotiate and reach agreement on case loads that employes of the Department of Public Welfare would be required to handle. The intervening appellee answered the charge by admitting that it refused to negotiate case loads and patient loads as alleged in the specification of charges, but denied that such action constituted an unfair labor practice. In the answer, intervening appellee asserted that case loads and patient loads are proper matters for "meet and discuss," and that intervening appellee had not refused to meet and discuss case loads and patient loads with appellant. Indeed, it is alleged that such meetings and discussions had taken place.

Judge MENCER's recent decision in *Pennsylvania Labor Relations Board v. State College Area School Dis-*

*trict,* 9 Pa. Commonwealth Ct. 229, 306 A. 2d 404 (1973), presented this Court's position on the proper interpretation of the provisions of Sections 701 and 702 of the Public Employe Relations Act (sometimes referred to as Act 195), Act of July 23, 1970, P. L. 563, 43 P.S. §1101.701 and §1101.702, being the Sections which provide as follows:

"§701   Matters subject to bargaining

"Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

"§702   Matters not subject to bargaining

"Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives."

In *State College Area School District, supra,* the lower court had declared that 21 items alleged by the employes to be bargainable under Section 701 were in fact items involving inherent managerial policy under Section 702. One of these items involved maximum

class size. Our unanimous Court[1] held the number of pupils assigned to a class was to be determined as inherent managerial policy subject to the meet and discuss provisions of Section 702. In the instant case, appellee, Pennsylvania Labor Relations Board, ruled that the decision of this Court in *State College Area School District, supra,* controlled, and that case load was a meet and discuss item, not bargainable. We agree and must affirm. The factors, considerations, and criteria ably set forth by Judge MENCER in that case apply with equal force here and need not be repeated.

Only one other point need be mentioned. It is appellant's position, at least to an extent shared by the Board, that this Court held in *State College Area School District, supra,* the mere assertion of an item to be a matter of inherent managerial policy by the employer required the Board to hold it not subject to collective bargaining. Certainly, this is not the holding of that case or a sixteen-page opinion could have been condensed to one sentence! Contrary to the Board's statement, the intervening appellee did present evidence to support its contention that this case load falls within the factors, considerations, and criteria established in *State College Area School District, supra,* to put it into the inherent managerial policy category. Specifically, the testimony of C. W. Myers, the chief negotiator for the intervening appellee, was as follows:

"Q. Did you explain to them how the workload requirement would affect these particular provisions? (referring to Section 702)

"A. Not in each and every case but I did point out to them it could affect the standards of services by virtue of limiting the amount of work a person would do in their seven and a half or eight hour day—or eight

---

[1] Three judges dissented as to the proper characterization of other items.

hour day—thus requiring the employment of additional employees if and when they were available.

"I told them also that it could affect the utilization of technology in that if we created a change—a new method of, for example, use of greater utilization of a computer—that this could impact what was expected of the people in the handling of any case or any workload.

"I told them also that it affected the organizational structure in that it could require a growth of the organization out of all proportion to reality because of the limitation on the amount of work that anyone was going to do in a day."

Accordingly, we enter the following

### ORDER

Now, October 2, 1974, the amended decision and order of the Pennsylvania Labor Relations Board, dated January 4, 1974, in the above matter is affirmed.

----

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent for the same basic reasons I dissented in *Pennsylvania Labor Relations Board v. State College Area School District,* 9 Pa. Commonwealth Ct. 229, 306 A. 2d 404 (1973). As I stated there: "If the item [sought to be negotiated under collective bargaining] directly affects a teacher's [employe's] personal rights, as it relates to wages, hours and conditions of employment, then it is subject to collective bargaining." 9 Pa. Commonwealth Ct. at 249, 306 A. 2d at 415.

It seems to me that the number of cases or patients which a caseworker must handle within a given period is an item directly related to the conditions of employment. If, for example, the public employer would direct a caseworker, or all caseworkers, to handle a number of cases or patients which everyone would agree was unreasonably high, and this condition became the sub-

ject of a labor dispute between the public employer and its employes, then this item should properly fall within the parameters of collective bargaining. To assert that the aggrieved employes can raise the unreasonableness of the public employer's requirements in a civil service appeal (from a discharge or other disciplinary action) is not an adequate answer to the problem. Resort to such a procedure would defeat the purpose of Act 195, Act of July 23, 1970, P. L. 563, 43 P.S. §1101.101 et seq., for the Act was designed to promote "harmonious relationships" between public employers and employes. It is difficult to conceive of this purpose being advanced when an employe is forced to risk disciplinary action before the reasonableness of the employer's action can be meaningfully resolved.

The majority opinion correctly states that in *State College Area School District* this Court was unanimous in its holding that the number of pupils assigned to a class is a matter of inherent managerial policy, directly related to the quality of education in our schools, and thus not subject to collective bargaining. I draw a distinction between that case and the one presently before us, based upon the nature of the work performed by the employes.

Under *State College Area School District,* a school district, in its discretion, is free to decide how large classes should be, in light of available resources. The effect of such determinations on teachers may be relatively less severe because a teacher, for all practical purposes, presents the same course of study whether there are 30 or 35 pupils in a class. I recognize that the larger number of pupils may make the manageability of the class more difficult, the number of test papers larger and other administrative functions of the teacher more demanding. A caseworker, however, usually confronts each case or patient on an individual or small group basis and, therefore, an increase in the number

could so complicate the caseworker's work day as to make it impossible to complete the assigned work, depending, of course, on the difficulty of the problems of each case or patient. Unlike a teacher whose class periods are restricted to specific times, a caseworker may be forced to expend considerable amounts of time on a single case. It seems to me that the number of cases which case workers must handle in a work period is personal, directly affects working conditions and therefore should be subject to collective bargaining. If, as is suggested by the majority opinion, the number of cases or patients could be changed by virtue of new technology or new methods, this too could be the subject of collective bargaining.

This whole area of law is a most difficult one which does not lend itself to any hard and fast rules. I still believe that the Board and the courts will have to evaluate each item as it is presented and attempt to strike a reasonable balance. In this case, on balance, I would hold that the casework load is subject to collective bargaining.